UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
ALBERTO E. LUGO, SAUL FELIX, FABIAN          :
OSORIO, ELGYN SUAZO, and FREYDA             :
TIPIZILA,                                    :
                                             :
                        Plaintiffs,          :        **COMPLAINT**
                                             :
        -against-                            :
                                             :
SUSHI VIDA INC. d/b/a MAMASUSHI, VIDA        :
CAFÉ INC. d/b/a MAMAJUANA CAFÉ,             :        **ECF CASE**
RANCHO VIDA LLC d/b/a MAMAJUANA             :
CAFÉ, VICTOR OSORIO, and CARMEN SUSANA      :
OSORIO,                                      :
                                             :
                        Defendants.          :
---------------------------------------------------------------------X

Plaintiffs Alberto E. Lugo, Saul Felix, Fabian Osorio, Elgyn Suazo, and Freyda

Tipizila ("plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of

defendants Sushi Vida Inc. d/b/a Mamasushi, Vida Café Inc. d/b/a Mamajuana Café,

Rancho Vida LLC d/b/a Mamajuana Café, Victor Osorio, and Susana Osorio

(collectively, "defendants"), allege:

**NATURE OF THE ACTION**

1.      This action is brought to recover unpaid minimum and overtime wages,

spread-of-hours pay, and other monies pursuant to the Fair Labor Standards Act, 29

U.S.C. § 201 *et seq.* ("FLSA"), and section 190 *et seq.* of the New York Labor Law

("NYLL") on behalf of waitstaff that worked for defendants.

2.      Defendants have systematically ignored the requirements of the FLSA and

NYLL.  Plaintiffs seek injunctive and declaratory relief against defendants' unlawful

actions, compensation for unpaid minimum and overtime wages, spread-of-hours pay,

liquidated damages, compensatory damages, misappropriated tips, pre- and post-

judgment interest, and attorneys' fees and costs pursuant to the FLSA and NYLL.

**JURISDICTION**

3.      This Court has subject matter jurisdiction of this case pursuant to 29

U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over

plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

**VENUE**

4.      Venue is proper in the Southern District of New York pursuant to 28

U.S.C. § 1391.  All relevant facts alleged in this Complaint occurred on defendants'

premises located in the Southern District of New York.

**THE PARTIES**

**Plaintiff**

5.      Alberto E. Lugo resides in the Bronx, New York.

6.      Defendants have employed Lugo as a waiter from approximately May

2011 to the present.

7.      Saul Felix resides in the Bronx, New York.

8.      Defendants have employed Felix as a waiter from approximately February

2009 to the present.

9.      Fabian Osorio resides in Queens, New York.

10.     Defendants have employed Osorio as a waiter from approximately March

2011 to January 2015.

11.     Elgyn Suazo resides in Manhattan, New York.

12.     Defendants have employed Suazo as a waiter from approximately March

2012 to the present.

13.     Freyda Tipizila resides in the Bronx, New York.

14.     Defendants have employed Tipizila as a waitress and hostess from

approximately March 2012 to the present.

**Defendants**

15.     Defendant Sushi Vida Inc. is a New York corporation that owns, operates, and does business as Mamasushi, a restaurant located at 237 Dyckman Street, New York, New York 10034 ("Mamasushi").

16.     Mamasushi has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

17.     Throughout plaintiffs' employment, Mamasushi was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

18.     Mamasushi has an annual gross volume of sales projected to be in excess of $500,000.

19.     Defendant Vida Café Inc. is a New York corporation that owns, operates, and does business as Mamajuana Café, a restaurant located at 247 Dyckman Street, New York, New York 10034 ("Mamajuana").

20.     Mamajuana has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

21.     Throughout plaintiffs' employment, Mamajuana was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22.     Mamajuana has an annual gross volume of sales projected to be in excess of $500,000.

23.     Defendant Rancho Vida Café LLC is a New York limited liability company that owned, operated, and did business as Mamajuana Café, a restaurant that was located as 570 Amsterdam Avenue, New York, New York 10024 ("Mamajuana 88").

24.     Throughout plaintiffs' employment, Mamajuana 88 had employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that were moved in or produced for commerce by any person.

25.     Throughout plaintiffs' employment, Mamajuana 88 was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

26.     Throughout plaintiffs' employment Mamajuana 88 had an annual gross volume of sales projected to be in excess of $500,000.

27.     Mamajuana 88 closed in or about February 2015.

28.     Defendant Carmen Susana Osorio is an owner of Mamasushi, Mamajuana, and Mamajuana 88.

29.     Throughout plaintiffs' employment, Carmen Susana Osorio had the authority to hire and fire employees, direct the manner in which employees performed their daily duties and assignments, and establish and implement the pay practices and work and scheduling policies at Mamasushi and Mamajuana 88.

30.     Carmen Susana Osorio exercises sufficient control over Mamasushi's operations to be considered plaintiff's employer under the FLSA and NYLL.

31.     Carmen Susana Osorio exercised sufficient control over Mamajuana 88's operations to be considered plaintiff's employer under the FLSA and NYLL.

32.     Defendant Victor Osorio is an owner of Mamasushi, Mamajuana, and Mamajuana 88.

33.     Throughout plaintiffs' employment, Victor Osorio had the authority to hire and fire employees, direct the manner in which employees performed their daily duties and assignments, and establish and implement the pay practices and work and scheduling policies at Mamajuana.

4

34.     Victor Osorio exercises sufficient control over Mamajuana's operations to be considered plaintiff's employer under the FLSA and NYLL.

## PLAINTIFFS' EMPLOYMENT WITH DEFENDANTS

**Defendants' Employment Practices and Failure to Pay of Wages**

35.     Plaintiffs regularly worked at least one hour before and one hour after the opening and closing hours of Mamasushi, Mamajuana, and Mamajuana 88.

36.     Defendants do not pay plaintiffs any wages for their work as waiters at Mamasushi.

37.     Plaintiffs' sole source of income for their work as waiters at Mamasushi was tips received from customers.

38.     With some exceptions, defendants pay plaintiffs $20 in cash per day at Mamajuana and Mamajuana 88, regardless of the number of hours worked.

**Plaintiff Alberto Lugo**

39.     With some exceptions, Lugo has worked at Mamasushi throughout his employment.

40.     From approximately May 2011 to June 2013, Lugo regularly worked sixty-five to seventy-five hours per workweek, six or seven days per week.

41.     Lugo worked three to five days of over ten hours in length per workweek from May 2011 to June 2013.

42.     From approximately June to December 2013, Lugo's work schedule varied each week.  For example, Lugo worked at least 48.23 hours in the week of July 14 and 69.87 hours in the week of October 6.

43.     From June to December 2013, Lugo worked several shifts that spanned more than ten hours in length.  For example, Lugo worked approximately 12 hours on June 9, 13 hours on August 29, and 12 hours on December 1.

44.     Lugo's work schedule varied each week in 2014.  For example, Lugo worked approximately 50.33 hours in the week of May 4 and approximately 53 hours in the week of September 21.

45.     Lugo worked shifts that spanned more than ten hours in length in 2014. For example, Lugo worked approximately 13.5 hours on February 6, 11.5 hours on June 23, 12 hours on September 21, and 12 hours on December 25.

46.     In 2015, Lugo has usually worked approximately fifty-two hours per workweek.

47.     Lugo has generally worked the following work schedule in 2015:  12:00 p.m. to approximately 12:00 a.m. on Monday and Wednesday; 12:00 p.m. to approximately 10:00 p.m. on Friday and Saturday; and 12:00 p.m. to approximately 8:00 p.m. on Sunday.

48.     On New Year's Eve of 2012, defendants required Lugo to work an eight-hour shift at Mamajuana 88 for no compensation.

49.     In or about August 2013, defendants required Lugo to work a fourteen-hour shift for no pay at the grand opening of a new Mamajuana Café in Patterson, New Jersey.

50.     In or about 2013, defendants required Lugo to work approximately six hours, without compensation, at a Mamajuana Café in Queens, New York.

51.     Mamasushi was remodeled in or about December 2014.

52.     Defendants required Lugo to clean the remodeling site, without compensation, for three days, seven hours each day.

53.     On or about June 1, 2014, defendants required plaintiff to work for six hours, without compensation, at a restaurant exposition and show at Yankee Stadium.

**Plaintiff Saul Felix**

54.     With some exceptions, Felix has worked at Mamasushi throughout his employment.

55.     From approximately 2009 to May 2015, Felix usually worked between approximately twenty-seven and thirty-nine hours per week.

56.     During this period, Felix generally worked from approximately 5:00 p.m. to 2:00 a.m. from Friday to Sunday.

57.     Felix also worked from 12:00 p.m. to 12:00 a.m. on two Tuesdays per month.

58.     Beginning in or about mid-May 2015, Felix has worked between thirty-three and forty-four hours per workweek.

59.     Since mid-May 2015, Felix has usually worked from 4:00 p.m. to 3:00 a.m. from Thursday to Saturday and every other Sunday each month.

60.     Defendants scheduled Felix to work for one day at Mamajuana 88 in the summer of 2014.

61.     Defendants scheduled Felix to work for four days at Mamajuana in or about the first week of December 2014.

**Plaintiff Fabian Osorio**

62.     Throughout his employment, defendants scheduled Osorio to work at Mamasushi, Mamajuana, and Mamajuana 88.

63.     From approximately 2011 to 2014, Osorio generally worked sixty-five to seventy hours per workweek at Mamasushi, Mamajuana, and Mamajuana 88.

64.     Osorio generally worked six days per workweek, at least five of which were longer than ten hours in length.

65.     In January 2015, Osorio worked at least fifty hours per workweek.

66.     In January 2015, Osorio regularly worked shifts of more than ten hours in length on Thursdays, Fridays, Saturdays, and sometimes Sundays.

67.     Osorio worked at Mamajuana from approximately March 2011 to the fall of 2011.

68.     During the first two weeks of October 2011, Osorio worked two or three days at Mamajuana and the rest of his workdays at Mamasushi.

69.     Osorio worked at Mamasushi for the remainder of 2011.

70.     Osorio worked at Mamajuana for two months in 2012.

71.     For the remainder of 2012, Osorio worked at Mamajuana 88 on Thursday, Sunday, and sometimes Friday, and the rest of his workdays at Mamasushi.

72.     Osorio worked seventy-five to eighty hours per week, seven days per week, during one month in 2012.

73.     Osorio worked more than ten hours every day of that month.

74.     In 2013, Osorio worked at Mamasushi, Mamajuana 88, and another Mamajuana restaurant in Queens.  For example, during one of the months of 2013, Osorio worked approximately four days of each week at Mamajuana in Queens, one day of the week at Mamajuana 88, and one day of the week at Mamasushi.

75.     Osorio worked at Mamasushi in 2014, until the summer.

76.     From the summer of 2014 until October 2014, Osorio worked two days per week at Mamajuana 88 and the rest of the week at Mamasushi.

77.     From the remainder of 2014, until the end of January 2015, Osorio generally worked at Mamajuana 88 and two days each week at Mamasushi.

**Plaintiff Elgyn Suazo**

78.     Throughout his employment, defendants scheduled Suazo to work at Mamasushi, Mamajuana, and Mamajuana 88.

8

79.    From approximately March 2012 to the mid-May 2015, Suazo regularly worked between forty-eight and fifty-seven hours per week.

80.    Suazo's schedule varied each week during this period, but he generally worked four or five days per week.

81.    Suazo worked from 12:00 p.m. to 1:00 a.m. on weekdays and from 2:00 p.m. to approximately 2:00 a.m. on weekends during this period.

82.    Since mid-May 2015, Suazo has worked approximately thirty-nine hours per week.

83.    Since mid-May 2015, Suazo has usually worked the following schedule: 7:00 p.m. to 12:00 a.m. on Monday; 2:00 p.m. to 1:00 a.m. on Wednesday; 7:00 p.m. to 3:00 a.m. on Friday; 8:00 p.m. to 3:00 a.m. on Saturday; and 6:00 p.m. to 2:00 a.m. on Sunday.

84.    Defendants scheduled Suazo to work every Sunday, from 9:00 a.m. to 4:00 p.m., at Mamajuana for four months in 2014.

85.    During that period, after leaving Mamajuana at or about 4:00 p.m. on Sunday, Suazo would continue to work the rest of his shift at Mamasushi.

86.    Defendants scheduled Suazo to work four days per week at Mamajuana 88 from September 2014 to February 2015.

**Plaintiff Freyda Tipizila**

87.    With some exceptions, Tipizila worked at Mamasushi throughout her employment.

88.    From March 2012 to November 2014, Tipizila regularly worked one or two days per week as a hostess.

89.    For her work as a hostess, defendants paid Tipizila $12 per hour in cash.

90.     From approximately March to May 2012, Tipizila worked forty-four to forty-eight hours per week.

91.     During this period, Tipizila generally worked from approximately 12:00 p.m. to 11:00 p.m. or 12:00 a.m. on Monday, Tuesday, Thursday, and Friday.

92.     From approximately June to August 2012, Tipizila generally worked fifty-three hours per week.

93.     During this period, Tipizila usually worked the following schedule: Monday from 3:00 p.m. to 12:00 a.m.; Wednesday from 5:00 p.m. to 12:00 a.m.; Friday and Saturday from 12:00 p.m. to 12:00 or 1:00 a.m.; and Sunday from 12:00 p.m. to 12:00 a.m.

94.     From approximately September 2012 to July 2013, Tipizila regularly worked thirty-one hours per week.

95.     During this period, Tipizila generally worked from 4:00 p.m. to 1:00 a.m. on Friday and from 2:00 p.m. to 1:00 a.m. on Saturday and Sunday.

96.     From approximately July 2013 to November 2014, Tipizila regularly worked thirty-three hours per week.

97.     During this period, Tipizila worked from approximately 4:00 p.m. to 3:00 a.m. from Friday to Sunday.

98.     From approximately the last week of November 2014 to the second week of December 2014, Tipizila generally worked fifty-five hours per week as a waitress at Mamajuana.

99.     During this period, Tipizila worked from approximately 12:00 p.m. to 1:00 a.m. on Monday, 12:00 p.m. to 12:00 a.m. on Wednesday and Friday, and 3:00 p.m. to 12:00 a.m. on Saturday and Sunday.

100.    From approximately December 2014 to mid-May 2015, Tipizila regularly worked fifty-three hours per week.

101.    During this period, Tipizila usually worked the following schedule:  5:00 p.m. to 1:00 a.m. on Monday and Wednesday; 2:00 p.m. to approximately 3:00 a.m. on Friday and Saturday; and 3:00 p.m. to approximately 2:00 a.m. on Sunday.

102.    Since mid-May 2015, Tipizila has generally worked forty-four hours per workweek.

103.    Since mid-May 2015, Tipizila has regularly worked the following schedule:  6:00 p.m. to 12:00 a.m. on Monday and Wednesday; 1:00 p.m. to 12:00 a.m. on Friday and Saturday; and 2:00 p.m. to 12:00 a.m. on Sunday.

**Unlawful Deductions and Additional Uncompensated Work**

104.    From approximately May 2011 to December 2014, a waitress named Cynthia, who is defendant Carmen Susana Osorio's sister-in-law, and a bartender named Clara, who is defendant Carmen Susana Osorio's cousin, worked at Mamasushi.

105.    During this period, defendant Carmen Susana Osorio frequently required Lugo and Osorio to give portions of their tips for each day to Cynthia and Clara.

106.     Throughout plaintiffs' employment, defendants have retained portions of plaintiffs' tips.  For example, defendant Carmen Susana Osorio retained Osorio's and Suazo's tips from two parties in December 2014 and a party in January 2015 at Mamajuana 88.

107.    Throughout plaintiffs' employment, defendants frequently required plaintiffs to run errands without compensation.  Defendants, *inter alia*, required plaintiff Lugo to purchase liquor and food for Mamasushi, clean the kitchen, go to the bank, and drive as a chauffeur of the individual defendants' family members, and plaintiffs to answer telephone orders and prepare food deliveries without pay.

108.     Throughout plaintiffs' employment, defendants have required plaintiffs to pay customers' bills when customers walked out or returned orders without paying.  By way of example, during the grand opening of the Mamajuana Café in Paterson, New Jersey, defendants required Lugo to pay a walkout party's bill of $300.

109.     Defendants have also required Lugo to pay over $100 in the summer of 2014 and over $60 in December 2014 as a result of walkouts.

110.     Defendants have required Tipizila to pay approximately $40 for a customer walkout in the fall of 2012 and $12 for a customer walkout in May 2015.

111.     Defendants have required Felix to pay approximately $120 for a walkout in March 2015 and $145 for a customer's return of an order in the summer of 2013.

112.     Defendants have required Osorio to pay approximately $150 in the summer of 2013, approximately $90 in the fall of 2013, and approximately $50 in the spring of 2014 for walkouts.

113.     Throughout plaintiffs' employment, defendants have required plaintiffs to pay for "chargebacks," which are debts that defendants incur when a credit card company rejects a charge made by a customer.

114.     Defendants have required Lugo to pay over $500 in chargebacks throughout his employment.

115.     Defendants have required Osorio to pay approximately $3,000 in chargebacks throughout his employment.  For example, in or around December 2013, Osorio had to pay almost $800 for three chargebacks.

116.     Defendants have required Suazo to pay almost $600 for three chargebacks in 2014.

117.     Defendants have required Tipizila to pay approximately $300 for chargebacks in 2014.

118.    Throughout plaintiffs' employment, defendants have required plaintiffs to purchase, embroider, and maintain uniforms at plaintiffs' own expense.  By way of example, defendants have required Felix to pay approximately $150, Osorio to pay approximately $330, and Tipizila to pay approximately $235 for uniforms.

119.    In or about the summer of 2013, the Internal Revenue Services audited and fined defendants for tax evasion and other tax violations.

120.    Following the audit of the Internal Revenue Services, defendants provided approximately two to five paychecks to plaintiffs Lugo, Felix, Osorio, and Tipizila.

121.    Defendants required Lugo, Felix, Osorio, and Tipizila to sign and return their paychecks to defendants.

122.    In exchange for providing paychecks and W-2 forms in 2013, defendants have required Lugo, Felix, Osorio, and Tipizila to pay defendants' payroll taxes in cash.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

123.    Plaintiffs repeat and reallege paragraphs 1 through 122 as if fully set forth herein.

124.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

125.    Defendants were required to pay plaintiffs the applicable minimum wage rate for each hour that they worked.

126.    Defendants failed to pay plaintiffs the minimum wages to which they were entitled under the FLSA.

127.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs.

128.     As a result of defendants' willful violations of the FLSA, plaintiffs have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

129.     Plaintiffs repeat and reallege paragraphs 1 through 128 as if fully set forth herein.

130.     Defendants are employers within the meaning of the NYLL §§ 190, 651(5), and 652, and supporting New York State Department of Labor Regulations.

131.     Defendants failed to pay plaintiffs the minimum wages to which plaintiffs were entitled under the NYLL.

132.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs minimum hourly wages.

133.     As a result of defendants' willful violations of the NYLL, plaintiffs have suffered damages by being denied minimum wages in accordance with the NYLL in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs of this action.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

134.     Plaintiffs repeat and reallege paragraphs 1 through 133 as if fully set forth herein.

135.     Defendants are employers within the meaning of the 29 U.S.C § 201, *et seq.*

136.    Defendants were required to pay plaintiffs one and one-half (1½) times their regular rates of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions of 29 U.S.C. § 207, *et seq.*

137.    Defendants failed to pay plaintiffs the overtime wages to which they were entitled under the FLSA.

138.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay plaintiffs overtime wages.

139.    Due to defendants' violations of the FLSA, plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## FOURTH CLAIM
### (New York Labor Law – Unpaid Overtime)

140.    Plaintiffs repeat and reallege paragraphs 1 through 139 as if fully set forth herein.

141.    Defendants are employers within the meaning of NYLL § 190 *et seq.*

142.    Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiffs one and one half (1½) times the regular rate of pay for all hours that plaintiffs worked in excess of forty.

143.    Defendants failed to pay plaintiffs the overtime wages to which they were entitled under the NYLL.

144.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs overtime wages.

145.    Due to defendants' willful violations of the NYLL, plaintiffs are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**FIFTH CLAIM**
**(New York Labor Law – Spread-of-Hours Pay)**

146.     Plaintiffs repeat and reallege paragraphs 1 through 145 as if fully set forth herein.

147.     Defendants willfully failed to pay plaintiffs additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which plaintiffs worked more than ten hours.

148.     By defendants' failure to pay plaintiffs spread-of-hours pay, defendants willfully violated the NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137-1.7, 3.10, and 146-1.6.

149.     Due to defendants' willful violations of the NYLL, plaintiffs are entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

**SIXTH CLAIM**
**(New York Labor Law – Wage Theft Prevention Act)**

150.     Plaintiffs repeat and reallege paragraphs 1 through 149 as if fully set forth herein.

151.     The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.  From its enactment on April 9, 2011, through 2014, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

152.     The NYLL and WTPA also require employers to provide employees with an accurate wage statement each time they are paid.

153.    Throughout plaintiffs' employment with defendants, defendants paid plaintiffs without providing a wage statement accurately listing:  the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

154.    In violation of NYLL § 191, defendants failed to furnish to plaintiffs at the time of hiring, whenever there was a change to plaintiffs' rates of pay, and on or before February 1 of each year of employment through 2014, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

155.    Defendants failed to furnish plaintiffs with each payment of wages an accurate statement listing:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

156.     Due to defendants' violation of NYLL § 195(1), plaintiffs are entitled to recover from defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

157.     Due to defendants' violation of NYLL § 195(3), plaintiffs are entitled to recover from defendants liquidated damages of $250 per workweek that the violation occurred, up to a maximum of $5,000, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

## SEVENTH CLAIM
### (New York Labor Law – Illegal Deductions from Gratuities, NYLL § 196-d)

158.     Plaintiffs repeat and reallege paragraphs 1 through 157 as if fully set forth herein.

159.     NYLL § 193(1) prohibits employers from making any deductions from an employee's wages, except for those permitted by law.

160.     NYLL § 196-d prohibits any employer or his agents from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity of any charge purported to be a gratuity for an employee.

161.     Defendants demanded or accepted, directly or indirectly, or retained a portion of gratuities belonging to plaintiffs.

162.     Defendants have been agents or officers of a corporation within the meaning of NYLL, Article 6, § 196-d and the supporting NYDOL regulations.

163.     By defendants' knowing or intentional demand for, acceptance, and/or retention of gratuities paid by customers for plaintiffs, defendants have willfully violated NYLL, Article 6, § 196-d and its supporting NYDOL Regulations.

164.    As a result of defendants' willful violations of the NYLL, plaintiffs are entitled to recover from defendants their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of this action, and pre- and post-judgment interest.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully requests that this Court enter a judgment:

a.    declaring that defendants have violated the minimum and overtime wage provisions of the FLSA and the NYLL;

b.    declaring that defendants have violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

c.    declaring that defendants unlawfully deducted amounts from plaintiffs' gratuities, in violation of the NYLL;

d.    declaring that defendants violated the notice provisions of the NYLL and WTPA;

e.    declaring that defendants' violations of the FLSA and NYLL were willful;

f.    enjoining future violations of the FLSA and NYLL by defendants;

g.    awarding plaintiffs damages for unpaid minimum and overtime wages, unlawfully retained gratuities, and spread-of-hours pay;

h.    awarding plaintiffs liquidated damages in an amount equal to twice the total amount of the wages found to be due pursuant to the FLSA and NYLL;

i.    awarding plaintiffs liquidated damages as a result of defendants' failure to furnish wage statements and annual notices pursuant to the NYLL;

j.    awarding plaintiffs pre- and post-judgment interest under the NYLL;

k.      awarding plaintiffs' reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

l.      awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
          June 23, 2015

PECHMAN LAW GROUP PLLC

By: _____
      Louis Pechman
      Gianfranco J. Cuadra
      488 Madison Avenue, 11th Floor
      New York, New York 10022
      (212) 583-9500
      pechman@pechmanlaw.com
      cuadra@pechmanlaw.com
      *Attorneys for Plaintiffs*